# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 2:17-cv-00309-RGK-PJW | Date | March 06, 2018 |
|---|---|---|---|
| Title | *Laura Lazar v. Martin Andrew Grant et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: | |
| Not Present | | Not Present | |

**Proceedings:** **(IN CHAMBERS) Order and Judgment Re: Court Trial**

## I. INTRODUCTION

On September 5, 2017, Plaintiffs Laura Lazar ("Lazar") and her father Daniel M. Gottlieb ("Gottlieb") (collectively, "Plaintiffs") filed a Third Amended Complaint ("TAC") against Defendant Martin Andrew Grant ("Grant").[1] The TAC alleges claims for (1) fraud, (2) conversion, (3) constructive trust, (4) money had and received, and (5) fraudulent transfer.

Under Plaintiffs' theory of the case, Lazar and Grant were in an on-again, off-again romantic relationship since 1986. In 2015, Grant misrepresented his intent to marry Lazar and his desire to earn her father's approval by demonstrating his prowess as an investor. Based on their personal relationship and his representation that he knew of profitable investment opportunities, Lazar transferred $5.9 million to Grant. In fact, Grant was already married and used Lazar's money to buy a $2.5 million home in Arizona, where he lived with his wife and children, and to obtain a $700,000 interest in the company HowTube. Grant denies these allegations. According to Grant, he never rekindled their one-time romantic relationship, and he legitimately received the money from Lazar to purchase coins for her collection.

A bench trial was held on February 22 and 23, 2018. Gottlieb was not present. After reviewing the record and considering all the arguments and evidence presented at trial, the Court finds for Defendant Grant on each of Plaintiffs' claims.

---

[1] Plaintiffs also named as Defendants in the TAC the Grant Trust, Martin Andrew Grant as Trustee of the Grant Trust, Divergent Research and Exploration, LLC, Lazy J Lot 57, LLC, and Golden Rule Management, LLC (collectively, "the Entity Defendants"). The clerk entered default against the Entity Defendants on October 18, 2017. (*See* ECF No. 159.) The Court previously denied without prejudice Plaintiffs' motion for default judgment, reasoning that the action had not yet been fully adjudicated with regard to all defendants. (*See* ECF No. 167.)

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:17-cv-00309-RGK-PJW | Date | March 06, 2018 |
|---|---|---|---|
| Title | *Laura Lazar v. Martin Andrew Grant et al.* | | |

**II.  FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This opinion serves as the findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52. Any finding of fact that actually constitutes a conclusion of law is adopted as such, and vice versa.

**A.  Findings of Fact**

This case presented as a classic "he-said, she-said." After listening to the parties' testimony, the Court finds both versions lack credibility. From what the Court can piece together, the Court makes the following findings of fact.

Lazar and Grant have known each other since 1986, and they were previously in a romantic relationship.

On January 4, 2013 Lazar wired $116,500.00 to Grant through his company Golden Rule Management LLC ("Golden Rule") so that he could renovate his home in Arizona and sell it for a profit. On September 6, 2013, Lazar wired another $72,000 to Grant, also for that purpose. Their plan appears to have been unsuccessful.

Lazar and Grant later decided to invest money in coins. On December 16, 2013, Lazar wired $400,000 to Golden Rule for that purpose. There is no evidence as to the success of this investment or where the $400,000 went after it was wired to Golden Rule.

On March 6, 2015, Lazar transferred $50,000 to Grant through his company Divergent Research and Exploration ("Divergent"). There is no evidence as to how Grant used the $50,000.

In August 2015, Lazar, Gottlieb, and Grant discussed a plan for Grant to buy the "Morgan coin collection" with a $465,000 investment from Gottlieb. The Morgan collection contained some duplicates and was incomplete. Grant believed he could sell the duplicate coins in order to buy the coins missing from the collection. Grant would resell the collection once it was complete, use the proceeds to return Gottlieb's investment they obtained a complete collection, and keep any remaining profit. Following their discussion, Gottlieb wired $465,000 to Divergent with the memo "Investment/Martin Grant - $$ should be back soon." On September 22, 2015, Lazar transferred an additional $56,000 to Grant to help in his efforts to purchase coins to complete the Morgan collection. Grant has not yet repaid Gottlieb. There is no clear evidence as to the current status of the project, who has possession of the collection, or the collection's current worth.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-00309-RGK-PJW | Date | March 06, 2018 |
|---|---|---|---|
| Title | *Laura Lazar v. Martin Andrew Grant et al.* | | |

Lazar had approximately $1.3 million in an investment account with Goldman Sachs. On November 24, 2015, Lazar transferred $1,032,641 from her Goldman Sachs account to her Bank of America account. Lazar then transferred a total of $1,085,000 from her Bank of America account to Divergent's account, as follows: $870,000 on November 25, 2015 and $215,000 on January 21, 2016. On March 28, 2016, Lazar transferred $210,000 from her Goldman Sachs account to her Bank of America account. She then transferred $590,000 to Divergent on April 19, 2016. On September 13, Lazar transferred another $87,815.17 from her Goldman Sachs account to her Bank of America account.

Lazar had approximately $4.6 million in an investment account with E-Trade. In June 2016, Lazar liquidated $3,945,939.11 from her E-Trade account and wired $3,000,000 to her Bank of America account. Lazar then transferred a total of $2,929,000 from her Bank of America account to Divergent, as follows: $1,179,000 on June 6, 2016, $1,000,000 on June 9, 2016, and $750,000 on June 24, 2016.

The parties presented conflicting evidence as to why Lazar transferred these sums to Grant. According to Lazar, Grant claimed, and Lazar agreed, that he could manage the money in Lazar's Goldman Sachs and E-Trade accounts better than Gottlieb. Specifically, Lazar and Grant had discussed the following investment opportunities: coins, affordable housing, the start-up company HowTube, bottling Arizona spring water, Internet advertising, ATMs, solar panels, and film production. According to Grant, Lazar paid him the money to buy coins for her collection. The conflicting testimony obscured whether Lazar's money was to be used to purchase coins for her collection, invested in a specific entity on Lazar's behalf, invested as part of a joint get-rich scheme, or used for some other purpose.

From March 2013 to November 2016, Grant purchased $375,000 worth of stock and $352,000 worth of convertible promissory notes in the company HowTube. Grant and Lazar's testimony conflict as to the source of Grant's investments. There is insufficient evidence to find Grant invested in HowTube using Lazar's money.

Grant purchased a $2.5 million dollar home in Arizona ("the Arizona Property") using money from Divergent. On December 30, 2016, Grant and the Grant Trust executed a Deed of Trust to secure a $2,000,000 Credit Line Promissory Note with Divergent as the beneficiary.

**B.     Conclusions of Law**

The Court has jurisdiction over this action pursuant to Title 28 U.S.C. §§ 1332 and 1367. The amount in controversy exceeds $75,000 and complete diversity exists between Plaintiffs and Defendant, who reside in California and Arizona respectively.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:17-cv-00309-RGK-PJW | Date | March 06, 2018 |
|---|---|---|---|
| Title | *Laura Lazar v. Martin Andrew Grant et al.* | | |

To establish fraud, Lazar must prove Grant (1) made a misrepresentation (2) with knowledge of its falsity (3) and with the intent to defraud, (4) on which Lazar justifiably relied and (5) which resulted in damages to Lazar. *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997). The only fraud alleged in the TAC pertains to the $5.9 million transferred from Lazar's Goldman Sachs and E-Trade accounts in 2015 and 2016.[2] The evidence established that Lazar transferred $4,604,000 to Grant from these accounts. But Plaintiffs lacked credible evidence to establish that Grant made a misrepresentation with knowledge of its falsity and an intent to defraud. The evidence produced on both sides was conflicting and inconclusive, and both Lazar and Grant's testimony was highly suspect.

To establish conversion, Lazar must prove (1) her ownership or right to possession of certain property (2) that Grant converted by a wrongful act or disposition of property rights (3) resulting in damages. *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015). Plaintiffs proved no wrongful act as necessary to establish conversion.

To prove they are entitled to a constructive trust, Plaintiffs must show "(1) the existence of a res (property or some interest in property); (2) the right to that res; and (3) the wrongful acquisition or detention of the res by another party who is not entitled to it." *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 909 (9th Cir. 2010). Plaintiffs assert they are entitled to a constructive trust over the Arizona Property and Grant's interest in HowTube. However, Plaintiffs failed to prove any wrongful act, failed to prove that either res is traceable to Plaintiffs' money, and therefore failed to prove they are entitled to a constructive trust.

To prove a claim for money had and received, Lazar must establish that (1) Grant received money that was intended to be used for Lazar's benefit; (2) the money was not used for Lazar's benefit; and (3) Grant has not given the money to Lazar. *Avidor v. Sutter's Place, Inc.*, 212 Cal. App. 4th 1439, 1454 (2013). "The claim is viable whenever one person has received money which belongs to another,

---

[2] During closing arguments, Plaintiffs' counsel moved to amend the TAC to conform to the evidence presented at trial, namely to include fraud based on the additional transfers made from Plaintiffs to Grant between January 4, 2013 and September 22, 2015. Federal Rule of Civil Procedure 15(b) permits amendment "to align the pleadings to conform to issues actually tried." Fed. R. Civ. P. 15(b). The argument that Plaintiffs produced meaningful evidence of additional fraud to which the TAC could conform is tenuous at best. Regardless, the Court **denies** Plaintiffs' motion to amend as prejudicial. A party can amend the complaint at any time, even after trial, unless doing so would prejudice the opposing party. *See* Fed. R. Civ. P. 15(b)(2); *Consol. Data Terminals v. Applied Dig. Data Sys., Inc.*, 708 F.2d 385, 396 (9th Cir. 1983). Where, as here, "the pleading amendment [is sought] after the purportedly relevant evidence ha[s] already been admitted, the question whether the defendant [will be] prejudiced by the amendment is no different from the question whether the issue introduced by the amendment was tried by consent." *Id.* Plaintiffs argue that Grant's failure to object to the introduction of the purported evidence of additional fraud is implied consent to amendment. Grant was proceeding *pro se*, however, and the Court does not construe his failure to object as consent to have that issue tried.

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:17-cv-00309-RGK-PJW | Date | March 06, 2018 |
|---|---|---|---|
| Title | *Laura Lazar v. Martin Andrew Grant et al.* | | |

and which in equity and good conscience should be paid over to the latter." *Id.* (internal quotation and citation omitted). In the absence of sufficient evidence that Lazar transferred the money to be invested solely for her own benefit, Plaintiffs' claim for money had and received fails.

Plaintiffs argued at trial that the Court should set aside the Credit Line Promissory Note and Deed of Trust executed on the Arizona Property as fraudulent transfers. "A transfer made . . . by a debtor is voidable as to a creditor . . . if the debtor made the transfer" (1) "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor"; (2) "[w]ithout receiving a reasonably equivalent value in exchange for the transfer"; and either (a) "[w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction" or (b) "[i]ntended to incur, or believed or reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as they became due." *Nautilus, Inc. v. Chao Chen Yang*, 11 Cal. App. 5th 33, 39 (2017) (citing Cal. Civ. Code § 3439.04(a)). Plaintiffs' evidence does not establish that Grant executed the Deed of Trust or Credit Line Promissory Note on the Arizona Property with the intent to hinder, delay, or defraud Plaintiffs in their collection of a debt owed, and it therefore does not establish a fraudulent transfer.

### III.    CONCLUSION

In this case, neither side was able to support their position with credible evidence. Because it is Plaintiffs' burden to prove their case, however, the Court finds for Defendant Grant on each of Plaintiffs' claims.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer